2024R00261/DAF/JMR

*RECEIVED*
*1:05 pm*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

APR 17 2024

AT 8:30
CLERK, U.S. DISTRICT COURT-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| v. | : | Crim. No. 24- 267 (KMW) |
| | : | |
| ERIC RIVERA, | : | 18 U.S.C. § 1349 |
| ADRIENNE PONZO, and | : | 18 U.S.C. § 1344 |
| JAMES WESSELS | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1956(h) |
| | : | 18 U.S.C. § 1957 |
| | : | 18 U.S.C. § 2 |

**FILED**

APR 17 2024

AT 8:30 WILLIAM T. WALSH
CLERK

## I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting in

Camden, charges:

### COUNT 1
(Conspiracy to Commit Bank Fraud)

### Background

### Individuals and Entities

1.     At all times relevant to this Indictment:

a.     Lender-1 was a financial institution that participated as lender

in the Paycheck Protection Program ("PPP"), as described herein. Lender-1 was a

"financial institution" within the meaning of Title 18, United States Code, Section 20.

b.     Financial Institution-1 was a "financial institution" within the

meaning of Title 18, United States Code, Section 20.

c.     Financial Institution-2 was a "financial institution" within the

meaning of Title 18, United States Code, Section 20.

d.     Financial Institution-3 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

e.     Financial Institution-4 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

f.     Financial Institution-5 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

g.     The U.S. Small Business Administration ("SBA") was an independent agency of the federal government created to aid, counsel, assist, and protect the interests of small business concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of the United States.

h.     Defendant ERIC RIVERA was a resident of Georgia. Defendant ERIC RIVERA owned or controlled companies One World Read LLC, Precis Laboratory LLC, and Nothing Much LLC.

i.     Defendant ADRIENNE PONZO was a resident of Delaware. Defendant ADRIENNE PONZO owned or controlled the company Queens Logistics LLC.

j.     Defendant JAMES WESSELS was a resident of Delaware.

k.     William Ingram, who is a co-conspirator and charged elsewhere, resided in Haddonfield, New Jersey. William Ingram owned or controlled several New Jersey companies, including King of Aces Barbershop LLC, Leader of the Pack Productions LLC, and East Coast Commercial Investment LLC.

2

l.      Yasha Barjona, who is a co-conspirator and charged elsewhere, resided in Phoenix, Arizona.  Yasha Barjona owned or controlled several companies, including Visionworks Group of America LLC.

m.      Co-Conspirator-1 ("CC-1"), who is a co-conspirator but not charged herein, was the branch manager at Lender-1's Conshohocken, Pennsylvania location until May 2021.

n.      Co-Conspirator-2 ("CC-2"), who is a co-conspirator but not charged herein, was a resident of New York.  CC-2 owned or controlled a New York company.

o.      Co-Conspirator-3 ("CC-3"), who is a co-conspirator but not charged herein, was a resident of North Carolina.  CC-3 owned or controlled Delaware companies.

p.      Individual-1 was a resident of Connecticut.  Individual-1 owned or controlled Company-1.

### The Paycheck Protection Program ("PPP")

q.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3

r.    To obtain a PPP loan, a business had to submit a PPP loan application signed by an authorized representative of the business.  The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the applicant had to state, among other things, its average monthly payroll expenses and number of employees.  These figures were used to determine whether the business was eligible for a PPP loan and to calculate the amount of money the business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses, such as tax forms and bank statements.

s.    A PPP loan application had to be processed by a participating financial institution (the lender).  If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

t.    PPP loan proceeds could only be used by the business for certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business used the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

4

u.     To obtain loan forgiveness of a loan in the amount of $150,000 or less, a borrower was required to submit a PPP Loan Forgiveness Application Form 3508S. Form 3508S required the borrower to report the amount of loan proceeds spent on payroll costs. It also required the borrower to certify that the information provided in the forgiveness application was true and correct.

### The Economic Injury Disaster Loan ("EIDL") Program

v.     The EIDL program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

w.     The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic.

x.     To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In addition, the business entity must have been in operation on February 1, 2020.

y.     The amount of the EIDL was determined based, in part, on the information provided by the applicant regarding the revenue, employees, and cost of goods of the business. The SBA directly issued any funds disbursed under an EIDL to the applicant business. A business was permitted to use EIDL funds for payroll expenses, sick leave, production costs, and business obligations such as debts, rent,

and mortgage payments.  If a business also obtained a PPP loan, the business was prohibited from using EIDL funds for the same purpose as PPP funds.

### The Bank Fraud Conspiracy

2.      From in or about January 2021 through in or about December 2021, in the District of New Jersey and elsewhere, defendants

**ERIC RIVERA and
JAMES WESSELS**

did knowingly and intentionally conspire and agree with each other and with CC-1, CC-3, William Ingram, and others to execute and attempt to execute a scheme and artifice to defraud a financial institution, Lender-1, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, Lender-1, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### The Object of the Conspiracy

3.      The object of the conspiracy was for the defendants and their co-conspirators to financially enrich themselves by obtaining PPP loans that were intended for small businesses distressed by the COVID-19 pandemic through the submission of fraudulent loan applications, for companies with little or no operations ("Non-Operating Companies"), that included false statements about the Non-Operating Companies' number of employees and payroll expenses, and by providing false documentation to Lender-1.

## Manner and Means of the Conspiracy

4.    It was part of the conspiracy that defendant ERIC RIVERA, CC-1, CC-3, and others learned that Lender-1 was accepting applications for PPP loans. Lender-1 required that applicants first open a business bank account with Lender-1.

5.    It was further part of the conspiracy that defendant ERIC RIVERA agreed with CC-3 and others to submit PPP loan applications to Lender-1 on behalf of Non-Operating Companies controlled by defendant ERIC RIVERA. These PPP loan applications contained materially false representations, including that that Non-Operating Companies controlled by defendant ERIC RIVERA had significantly higher employees and payroll expenses than they actually had.

6.    It was further part of the conspiracy that defendant JAMES WESSELS created fraudulent IRS tax forms—including Forms 941 (Employer's Quarterly Federal Tax Return—in the names of Non-Operating Companies controlled by defendant ERIC RIVERA that falsely represented that they had employees and payroll expenses in the period preceding the PPP loan applications. These fraudulent IRS tax forms were submitted to Lender-1 as part of the PPP applications.

7.    It was further part of the conspiracy that CC-3 created fraudulent bank statements in the names of Non-Operating Companies controlled by defendant ERIC RIVERA. These fraudulent bank statements were submitted to Lender-1 as part of some PPP applications.

8.    It was further part of the conspiracy that on or about March 20, 2021, and March 26, 2021, based on the fraudulent PPP loan applications, defendant ERIC

RIVERA received PPP loans from Lender-1 in the amount of $140,000 and $145,000 for One World Read LLC and Precis Laboratory LLC.

9.     It was further part of the conspiracy that defendant ERIC RIVERA recruited individuals who owned or controlled Non-Operating Companies, and some of the recruited individuals recruited other individuals who owned or controlled Non-Operating Companies (together, the "Recruits"). Some of these Non-Operating Companies were New Jersey companies and some of the Recruits were residents of New Jersey.

10.     It was further part of the conspiracy that defendant ERIC RIVERA, CC-3, and others directed the Recruits to open business bank accounts at Lender-1's Conshohocken, Pennsylvania branch even where the Recruits lived far from Conshohocken, Pennsylvania. In some instances where the Recruits lived far from Conshohocken, Pennsylvania, CC-3 opened accounts for the Recruits.

11.     It was further part of the conspiracy that defendant ERIC RIVERA, CC-3, and others directed some Recruits to transfer ownership of their Non-Operating Companies to other individuals to increase their chances of obtaining PPP loans.

12.     It was further part of the conspiracy that, after individuals were recruited, CC-3 prepared PPP applications to Lender-1 in the name of the Non-Operating Companies. The applications contained materially false statements whose purpose was to induce Lender-1 to approve PPP loans that otherwise would not have been approved. Those false statements included the representations that the Non-Operating Companies had significantly higher employees and payroll expenses than they actually had.

8

13.     It was further part of the conspiracy that the PPP applications prepared by CC-3 and submitted to Lender-1 included materially false documentation to support the fraudulent PPP loan applications.  That false documentation often included fraudulent bank statements and fraudulent tax documents purporting to substantiate the applications' claims that the businesses had a substantial number of employees with significant average monthly payroll.  The false documentation sometimes also included backdated operating agreements.

14.     It was further part of the conspiracy that defendant JAMES WESSELS created fraudulent IRS tax forms—including Forms 941 (Employer's Quarterly Federal Tax Return—in the names of the Recruits' Non-Operating Companies that falsely represented that they had employees and payroll expenses in the period preceding the PPP loan applications. These fraudulent IRS tax forms were submitted to Lender-1 as part of the PPP applications.  CC-3 paid Defendant JAMES WESSELS for each fraudulent IRS tax form that he created.

15.     It was further part of the conspiracy that CC-3 created fraudulent bank statements in the names of some Non-Operating Companies.  These fraudulent bank statements were submitted to Lender-1 as part of some PPP applications.

16.     It was further part of the conspiracy that based on the materially false statements and documentation in the PPP applications, Lender-1 approved more than 35 PPP loans and disbursed almost $5,000,000 to the Non-Operating Companies.

17.    It was further part of the conspiracy that the Recruits paid defendant ERIC RIVERA or defendant ERIC RIVERA's companies a percentage of each PPP loan that was approved and funded.

18.    It was further part of the conspiracy that CC-3 prepared applications for PPP forgiveness to Lender-1 in the name of some Non-Operating Companies. The applications contained materially false statements whose purpose was to induce Lender-1 and the SBA to forgive PPP loans that otherwise would not qualify for forgiveness. Those false statements included the representations that the Non-Operating Companies had significantly higher employees than they actually had and that they spent a higher percentage of the PPP loan proceeds on permissible expenses such as payroll than they actually did.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 THROUGH 4
(Bank Fraud)

1.      Paragraphs 1 and 3 through 18 of Count 1 of the Indictment are incorporated as if set forth in full herein.

2.      On or about the dates listed below, in the District of New Jersey and elsewhere, defendants

### ERIC RIVERA and
### JAMES WESSELS

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud a financial institution, and aid and abet the scheme and artifice to defraud a financial institution, that was Lender-1, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the control of, a financial institution, Lender-1, by means of materially false and fraudulent pretenses, representations, and promises, by causing the following PPP loan applications to be submitted:

| Count | Approx. Date | Borrower Company | Approx. Amount |
|-------|--------------|------------------|----------------|
| 2 | 3/19/2021 | King of Aces Barbershop LLC | $122,000 |
| 3 | 4/10/2021 | East Coast Commercial Investment LLC | $143,000 |
| 4 | 4/20/2021 | Leader of the Pack Productions LLC | $145,000 |

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 5
(Conspiracy to Commit Wire Fraud)

1.    Paragraphs 1 and 3 through 18 of Count 1 of the Indictment are incorporated as if set forth in full herein.

### The Wire Fraud Conspiracy

2.    From in or about July 2020 through in or about December 2020, in the District of New Jersey and elsewhere, defendants

### ERIC RIVERA and
### ADRIENNE PONZO

did knowingly and intentionally conspire with each other and with William Ingram and others to devise a scheme and artifice to defraud the U.S. Small Business Administration, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

### Object of the Conspiracy

3.    The object of the conspiracy was for the defendants and their co-conspirators to financially enrich themselves by submitting materially fraudulent applications to the SBA for EIDL loans that were intended for small businesses distressed by the COVID-19 pandemic, through the submission of fraudulent loan applications, for companies with little or no operations ("Non-Operating Companies"),

12

that included false statements about the Non-Operating Companies' gross revenues, and by providing false documentation to the SBA.

### Manner and Means of the Conspiracy

4.    It was part of the conspiracy that defendant ERIC RIVERA recruited individuals who owned or controlled Non-Operating Companies (the "Recruits"). At least one of the Non-Operating Companies was a New Jersey company and at least one of the Recruits was a resident of New Jersey.

5.    It was further part of the conspiracy that defendant ADRIENNE PONZO prepared applications for EIDLs on behalf of Non-Operating Companies recruited by defendant ERIC RIVERA and others. On each of these EIDL applications, defendant ADRIENNE PONZO provided materially false information, including about each Non-Operating Company's gross revenues for the twelve months preceding January 31, 2020.

6.    It was further part of the conspiracy that defendants ERIC RIVERA and ADRIENNE PONZO directed some Recruits to transfer ownership of their Non-Operating Companies to other individuals to increase their chances of obtaining EIDL loans.

7.    It was further part of the conspiracy that defendant ADRIENNE PONZO prepared fraudulent bank statements and fraudulent IRS tax documents for some of the EIDL applications she facilitated, which were then submitted to the SBA along with the fraudulent EIDL applications.

8.    It was further part of the conspiracy that based on the materially false information included in the EIDL applications, the SBA approved EIDLs for Non-Operating Companies that it otherwise would not have approved.

9.    It was further part of the conspiracy that after approving the EIDLs, the SBA disbursed the loan proceeds into bank accounts maintained by the Recruits.  At least two of the EIDL loans that the SBA approved based on loan applications that defendants ERIC RIVERA and ADRIENNE PONZO caused to be submitted were funded via Automated Clearing House (ACH) payments sent from the SBA's server in a state other than New Jersey, through a server in New Jersey, to the Recruit's bank account.

10.    It was further part of the conspiracy that the Recruits paid defendant ERIC RIVERA or defendant ERIC RIVERA's companies or defendant ADRIENNE PONZO's companies after the EIDL loans were approved and funded.  Defendant ERIC RIVERA also paid defendant ADRIENNE PONZO for her role in the conspiracy.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 6-7
(Wire Fraud)

1.    Paragraph 1 of Count 1 of this Indictment and paragraphs 1 and 3 through 10 of Count 5 of this Indictment are incorporated as if set forth in full herein.

2.    On or about the dates listed below, in the District of New Jersey and elsewhere, defendants

**ERIC RIVERA and
ADRIENNE PONZO**

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and aid and abet the scheme and artifice to defraud, the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and, for purposes of executing and attempting to execute such scheme and artifice to defraud, did knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, namely the wire transfers described below, each constituting a separate count of this Indictment:

| Count | Approximate Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 6 | 11/20/2020 | ACH payment of approximately $147,100 from the SBA, through New Jersey, to the bank account of Visionworks Group of America at Financial Institution-1, representing proceeds of an EIDL loan approved based on a fraudulent EIDL application. |
| 7 | 12/15/2020 | ACH payment of approximately $141,500 from the SBA, through New Jersey, to the bank account of King of Aces Barbershop at Financial Institution-2, representing proceeds of an EIDL loan approved based on a fraudulent EIDL application. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 8
### (Conspiracy to Engage in Money Laundering)

1.      Paragraphs 1 and 3 through 18 of Count 1 of the Indictment are incorporated as if set forth in full herein.

### The Conspiracy

2.      From approximately June 2021 through approximately December 2021, in the District of New Jersey and elsewhere, defendant

### JAMES WESSELS

did knowingly and intentionally conspire and agree with William Ingram, CC-2, and others to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, namely bank fraud, contrary to Title 18, United States Code, Section 1344, with the intent to promote the carrying on of specified unlawful activity, namely bank fraud, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i).

### Object of the Conspiracy

3.      The object of the conspiracy was for defendant JAMES WESSELS to assist William Ingram and CC-2 by making it appear as if Non-Operating Companies controlled by William Ingram and CC-2 were using the proceeds of fraudulently-obtained PPP loans for the permissible purpose of disbursing payroll to employees, to support subsequent fraudulent applications for loan forgiveness.

17

## Manner and Means of the Conspiracy

4.    It was a part of the conspiracy that William Ingram and CC-2 received into bank accounts at Lender-1 in the name of Non-Operating Companies that they controlled at Lender-1, four PPP loans based on fraudulent PPP loan applications.

5.    It was further part of the conspiracy that defendant JAMES WESSELS agreed with William Ingram and CC-2 to facilitate the issuance of fake payroll checks by William Ingram's and CC-2's Non-Operating Companies even though these Non-Operating Companies did not have any employees.

6.    It was further part of the conspiracy that William Ingram and CC-2 provided defendant JAMES WESSELS with the identities of associates and family members to be paid from PPP loan proceeds and the amounts of money that each individual would receive.

7.    It was further part of the conspiracy that William Ingram's and CC-2's associates and family members completed Forms W4, which William Ingram and CC-2 sent to defendant JAMES WESSELS.

8.    It was further part of the conspiracy that defendant JAMES WESSELS printed fake payroll checks and sent them to William Ingram in New Jersey and CC-2 in New York for further distribution to William Ingram's and CC-2's associates and family members.

9.    It was further part of the conspiracy that William Ingram's and CC-2's associates and family members cashed the fake payroll checks and returned most of the cash to William Ingram and CC-2.

10.    It was further part of the conspiracy that more than 60 percent of the PPP loan proceeds disbursed to William Ingram's and CC-2's Non-Operating Companies were distributed via fake payroll check because PPP program rules stated that at least 60 percent of proceeds needed to be spent on payroll or other qualifying expenses to qualify for loan forgiveness.

11.    It was further part of the conspiracy that William Ingram and CC-2 each paid defendant JAMES WESSELS for preparing the fake payroll checks.

12.    It was further part of the conspiracy that between in or around October 2021 and in or around December 2021, CC-3 submitted to Lender-1—and William Ingram and CC-2 signed—applications for PPP loan forgiveness for their Non-Operating Companies. The loan forgiveness applications falsely stated that William Ingram's and CC-2's Non-Operating Companies spent more than 60 percent of the PPP loan proceeds on payroll expenses. After receiving the fraudulent loan forgiveness applications, Lender-1 forgave each PPP loan received by William Ingram's and CC-2's Non-Operating Companies.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 9
(Conspiracy to Engage in Monetary Transactions
in Property Derived from Specified Unlawful Activity)

1.    Paragraphs 1 and 3 through 18 of Count 1 of the Indictment and

paragraphs 1 and 3 through 10 of Count 5 of this Indictment are incorporated as if

set forth in full herein.

### The Conspiracy

2.    From in or about November 2020 through in or about June 2021, in the

District of New Jersey and elsewhere, defendants

**ERIC RIVERA and
ADRIENNE PONZO**

did knowingly conspire and agree with each other and with others to engage in, or

attempt to engage in, monetary transactions, namely, deposits, withdrawals,

transfers and exchanges of U.S. Currency and monetary instruments, through

financial institutions, affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, such property having been derived

from specified unlawful activity, namely bank fraud, wire fraud and conspiracy to

commit bank and wire fraud, contrary to Title 18, United States Code, Section 1957.

### Object of the Conspiracy

3.    The object of the conspiracy was for defendants ERIC RIVERA and

ADRIENNE PONZO to enrich themselves by receiving a portion of the PPP and EIDL

loans that were obtained by Recruits and Non-Operating Companies that they

recruited and assisted.

### Manner and Means of the Conspiracy

4.       It was part of the conspiracy that, based on false information and documentation that was included in the Non-Operating Companies' PPP and EIDL applications, the Lender-1 and the SBA approved PPP and EIDL loans for the Non-Operating Companies and deposited the PPP and EIDL proceeds into bank accounts in the name of the Non-Operating Companies.  These proceeds represented proceeds of bank fraud conspiracy, wire fraud conspiracy, bank fraud, and wire fraud.

5.       It was further part of the conspiracy that after the PPP and EIDL loan proceeds were deposited into the Non-Operating Companies' bank accounts, defendant ERIC RIVERA caused the Recruits to transfer a portion of those funds from the Non-Operating Companies' bank accounts to bank accounts controlled by defendant ERIC RIVERA.   These transfers were generally done by either wire transfer or by paper check delivered to defendant ERIC RIVERA.  These wires and checks often contained notations to give the false impression that the Non-Operating Companies were using PPP and EIDL loan proceeds for legitimate business activity rather than to compensate defendant ERIC RIVERA and his co-conspirators for helping the Recruits to obtain PPP and EIDL loans based on fraudulent applications.

6.       For example, as part of the conspiracy, defendant ERIC RIVERA caused the following monetary transactions in amounts exceeding $10,000, affecting interstate and foreign commerce, to occur:

a. On or about November 20, 2020, the SBA approved an EIDL loan for Visionworks Group of America LLC and deposited approximately $147,100 into the Visionworks Group of America LLC bank account

at Financial Institution-1. On or about November 25, 2020, defendant ERIC RIVERA caused Yasha Barjona to wire $72,000 from the Visionworks Group of America LLC bank account to a bank account at Financial Institution-3 in the name of Precis Laboratory LLC, a company controlled by defendant ERIC RIVERA..

b. On or about April 13, 2021, Lender-1 approved a PPP loan for East Coast Commercial Investment LLC and deposited approximately $143,000 into the East Coast Commercial Investment LLC bank account at Lender-1. On or about April 20, 2021, defendant ERIC RIVERA caused William Ingram to wire $21,450 from the East Coast Commercial Investment LLC bank account to a bank account at Financial Institution-3 in the name of Precis Laboratory LLC, a company controlled by defendant ERIC RIVERA.

c. On or about April 27, 2021, Lender-1 approved a PPP loan for Leader of the Pack Productions LLC and deposited approximately $145,000 into the Leader of the Pack Productions LLC bank account at Lender-1. Defendant ERIC RIVERA caused William Ingram to write two checks, of $9,000 and $12,750, dated April 10, 2021 and April 15, 2021, from the Leader of the Pack Productions LLC bank account to One World Read LLC, a company controlled by defendant ERIC RIVERA, bearing memo lines that did not accurately reflect the purpose of the payments. On or about May 17, 2021, defendant ERIC

RIVERA deposited these two checks into the One World Read LLC bank account at Financial Institution-3.

    d.  On or about May 4, 2021, Lender-1 approved a PPP loan for King of Aces Barbershop LLC and deposited approximately $122,000 into the King of Aces LLC bank account at Lender-1. Defendant ERIC RIVERA caused William Ingram to write two checks, of $10,800 and $7,500, dated April 28, 2021 and May 8, 2021, to Nothing Much LLC, a company controlled by defendant ERIC RIVERA, bearing memo lines that did not accurately reflect the purpose of the payments. On or about May 17, 2021, defendant ERIC RIVERA deposited these two checks into the Nothing Much LLC bank account at Financial Institution-4.

    7.    It was further part of the conspiracy that defendant ERIC RIVERA caused transfers of a portion of the PPP proceeds from bank accounts that he controlled to bank accounts controlled by CC-3. For example, as part of the conspiracy, defendant ERIC RIVERA engaged in the following monetary transaction in an amount exceeding $10,000, affecting interstate and foreign commerce: On or about July 15, 2021, defendant ERIC RIVERA wired $25,000 from the Nothing Much LLC bank account at Financial Institution-4 to CC-3's bank account at Financial Institution-2.

    8.    It was further part of the conspiracy that defendants ERIC RIVERA and ADRIENNE PONZO caused transfers of a portion of the EIDL proceeds from bank accounts controlled by defendant ERIC RIVERA to bank accounts controlled by

defendant ADRIENNE PONZO. For example, as part of the conspiracy, defendants ERIC RIVERA and ADRIENNE PONZO engaged in the following monetary transactions in amounts exceeding $10,000, affecting interstate and foreign commerce:

      a. On or about November 27, 2020, defendant ERIC RIVERA wired $15,000 from the Precis Laboratory bank account at Financial Institution-3 to a bank account controlled by defendant ADRIENNE PONZO at Financial Institution-5.

      b. On or about December 17, 2020, defendant ERIC RIVERA wired $14,330 from the Precis Laboratory bank account at Financial Institution-3 to a bank account controlled by defendant ADRIENNE PONZO at Financial Institution-5.

9.    It was further part of the conspiracy that after defendants ERIC RIVERA and ADRIENNE PONZO received the PPP and EIDL loan proceeds, they used the funds to pay personal expenses.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 10-17**
(Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity)

1.      Paragraphs 1 and 3 through 18 of Count 1 of this Indictment and paragraphs 1 and 3 through 10 of Count 5 of this Indictment are incorporated as if set forth in full herein.

2.      On or about the dates specified below, in the District of New Jersey and elsewhere, the defendant specified per count below did knowingly engage in, and attempt to engage in, and aided and abetted the engaging in, the monetary transactions specified below, namely, deposits, withdrawals, transfers and exchanges of U.S. Currency and monetary instruments, through financial institutions, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, namely bank fraud and wire fraud:

| Count | Defendant(s) | Date | Amount | Transaction |
|-------|-------------|------|--------|-------------|
| 10 | ERIC RIVERA | 11/25/2020 | $72,000 | Wire from Financial Institution-1 Visionworks Group of America bank account to Financial Institution-3 Precis Laboratory bank account. |
| 11 | ERIC RIVERA; ADRIENNE PONZO | 11/27/2020 | $15,000 | Wire from Financial Institution-3 Precis Laboratory bank account to Financial Institution-5 account in the name of Queens Logistics controlled by Adrienne Ponzo. |
| 12 | ERIC RIVERA; ADRIENNE PONZO | 12/17/2020 | $14,330 | Wire from Financial Institution-3 Precis Laboratory bank account to Financial Institution-5 |

| Count | Defendant(s) | Date | Amount | Transaction |
|---|---|---|---|---|
| | | | | account in the name of Queens Logistics controlled by Adrienne Ponzo. |
| 13 | ERIC RIVERA | 4/20/2021 | $21,450 | Wire from the Lender-1 East Coast Commercial Investment bank account to Financial Institution-3 Precis Laboratory bank account. |
| 14 | ERIC RIVERA | 4/23/2021 | $72,500 | Wire from the Lender-1 Company-1 bank account to Financial Institution-3 Precis Laboratory bank account. |
| 15 | ERIC RIVERA | Check date 4/15/2021; deposit 5/17/2021 | $12,750 | Check written from the Lender-1 Leader of the Pack Productions LLC account, deposited into Financial Institution-3 One World Read LLC account |
| 16 | ERIC RIVERA | Check date 4/28/2021; deposit 5/17/2021 | $10,800 | Check written from the Lender-1 King of Aces Barbershop LLC account, deposited into Financial Institution-4 Nothing Much LLC account |
| 17 | ERIC RIVERA | 7/15/2021 | $25,000 | Wire from the Financial Institution-4 Nothing Much LLC bank account to CC-3's bank account at Financial Institution-2. |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATION AS TO COUNTS 1 THROUGH 4

1.    As a result of committing the offenses charged in Counts 1 through 4 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of the offenses charged in Counts 1 through 4 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS 5 THROUGH 7

2.    As a result of committing the offenses charged in Counts 5 through 7 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the offenses alleged in Counts 5 through 7 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS 8 THROUGH 17

3.    As a result of committing the money laundering offenses charged in Counts 8 through 17 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such money laundering offenses, and all property traceable to such property.

## SUBSTITUTE ASSET PROVISION

4. If any of the property described above, as a result of any act or omission of the defendants charged in this Indictment:

a.  cannot be located upon the exercise of due diligence;

b. has been transferred to or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(a)(1) and Title 28 United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described above.

A TRUE BILL

FOREPERSON

PHILIP R. SELLINGER
United States Attorney

28

CASE NUMBER: _____

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

ERIC RIVERA
ADRIENNE PONZO
JAMES WESSELS

INDICTMENT FOR
18 U.S.C. § 1349
18 U.S.C. § 1344
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 2

A TRUE BILL,

FOREPERSON

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL A. FRIEDMAN
JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026