UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Karen M. Williams, U.S.D.J. |
| | : | |
| v. | : | |
| | : | Crim. No. 24-267 (KMW) |
| ERIC RIVERA, ADRIENNE PONZO, | : | |
| and JAMES WESSELS | | |

---

## BRIEF OF THE UNITED STATES IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

---

VIKAS KHANNA
Acting United States Attorney
401 Market Street
Camden, New Jersey 08101
(856) 757-5026

<u>On the Memorandum</u>:
Daniel A. Friedman
Jason M. Richardson
Assistant United States Attorneys

# Table of Contents

**Page**

**TABLE OF CONTENTS** ................................................................. i

**TABLE OF AUTHORITIES** ........................................................... iii

I.    PRELIMINARY STATEMENT ......................................................1

II.   FACTUAL BACKGROUND .........................................................1

    A. The PPP and EIDL Programs.................................................1

    B. Defendants' Scheme to Defraud the PPP and EIDL Programs. .......................2

    C. Defendants' Money Laundering Conspiracies With the PPP and EIDL Proceeds. ...................................................................5

    D. Procedural History. .........................................................6

III.  ARGUMENT ..................................................................6

    A. The Court Should Not Sever Ponzo or Ponzo's Counts From Wessels or Wessels' Counts. ...........................................................6

        1. The Charges Were Properly Joined Under Rule 8 ...........................6

        2. The Charges Should Not be Severed Under Rule 14...........................8

    B. The Money Laundering Counts Do Not Violate the Merger Doctrine. ...........14

    C. The Wire Fraud Counts and the Money Laundering Counts Are Not Multiplicitous. ...........................................................19

        1. The Wire Fraud Counts and the Money Laundering Counts Are Not Multiplicitous...........................................................19

        2. Alternatively, a Multiplicity Claim is Not Amenable to a Ruling on a Motion to Dismiss...........................................................20

    D. The Court Should Deny Ponzo's Brady Motion. ...............................21

        1. The Government's Discovery ...............................................21

        2. The Government has produced discovery in a standard, reviewable format and has no additional obligation to scour the discovery already produced to Ponzo for potential Brady material...........................23

3.  This Court should deny as premature Ponzo's motion to compel pretrial disclosure of Giglio material and the Government will continue to abide by its Giglio obligations..................................................... 31

E.  Defendants' Requests for a Bill of Particulars Should be Denied Because the Defendants Have Received a Detailed Indictment and Extensive Discovery. ...........................................................................................................32

1.  A Bill of Particulars is Unwarranted Because the Indictment and Discovery Give the Defendants Ample Information ................................... 32

2.  Defendants' Individual Requests ....................................................... 36

IV.  THE DEFENDANTS SHOULD BE ORDERED TO PRODUCE RECIPROCAL DISCOVERY AND PRIOR DEFENSE WITNESS STATEMENTS.................................................................................................. 39

V.  CONCLUSION ........................................................................................... 40

# Table of Authorities

**Cases**        **Page(s)**

*Blockburger v. United States,*
284 U.S. 299 (1932)..................................................................................... 19, 20

*Brady v. Maryland,*
373 U.S. 83 (1963)........................................................................................ 21, 24

*Brown v. United States,*
Crim. No. 02-14, 2006 WL 1582421 (M.D. Ga. June 5, 2006)................................ 27

*Buchanan v. Kentucky,*
483 U.S. 402 (1987)............................................................................................. 9

*Dennis v. Sec'y, Pennsylvania Dep't of Corr.,*
834 F.3d 263 (3d Cir. 2016) ................................................................................ 25

*Dukes v. Pappas,*
405 F. App'x 666 (3d Cir. 2010).......................................................................... 24

*Giglio v. United States,*
405 U.S. 150 (1972)............................................................................................ 31

*Gov't of Virgin Islands v. Sanes,*
57 F.3d 338 (3d Cir. 1995) ................................................................................. 10

*Jones v. Thomas,*
491 U.S. 376 (1989)............................................................................................ 20

*Rhoades v. Henry,*
638 F.3d 1027 (9th Cir. 2011).............................................................................. 26

*Richardson v. Marsh,*
481 U.S. 200 (1987)................................................................................. 8, 9, 11

*United States v. Abdulwahab,*
715 F.3d 521 (4th Cir. 2013) ......................................................................... 17, 18

*United States v. Adams,*
759 F.2d 1099 (3d Cir. 1985) .............................................................................. 12

*United States v. Addonizio,*
451 F.2d 49 (3d Cir. 1971) ................................................................................. 33

*United States v. Atwell,*
2015 WL 2092687 (D.N.J. May 5, 2015) .............................................................. 38

*United States v. AU Optronics Corp.*,
   Crim. No. 09-110, 2011 WL 6778520 (N.D. Cal. Dec. 23, 2011) .......................... 27

*United States v. Bellomo*,
   263 F. Supp. 2d 561 (E.D.N.Y. 2003) ...................................................... 33

*United States v. Blankenship*,
   No. 5:14-CR-00244, 2015 WL 3687864 (S.D.W. Va. June 12, 2015)...................... 26

*United States v. Blassingame*,
   197 F.3d 271 (7th Cir. 1999) ................................................................. 8

*United States v. Briggs*,
   831 F. Supp. 2d 623 (W.D.N.Y. 2011) .................................................... 27

*United States v. Carter*,
   576 F.2d 1061 (3d Cir.1978) ................................................................ 19

*United States v. Caruso*,
   948 F. Supp. 382 (D.N.J. 1996) ............................................................ 35

*United States v. Causey*,
   185 F.3d 407 (5th Cir. 1999) ............................................................... 11

*United States v. Centeno*,
   793 F.3d 378 (3d Cir. 2015) ................................................................ 20

*United States v. Chartock*,
   283 F. App'x 948 (3d Cir. 2008)........................................................... 17

*United States v. Coffey*,
   361 F. Supp. 2d 102 (E.D.N.Y. 2005) .................................................... 38

*United States v. Conley*,
   37 F.3d 970 (3d Cir. 1994) .................................................................. 16

*United States v. Console*,
   13 F.3d 641 (3d Cir. 1993) ............................................................9, 11, 12

*United States v. Contech Engineered Sols. LLC*,
   No. 5:20-CR-481-FL-2, 2021 WL 714991 (E.D.N.C. Feb. 18, 2021)...................... 28

*United States v. Cook*,
   2018 WL 1744682 (M.D. Pa. April 11, 2018) ........................................... 38

*United States v. Crabb*,
   2008 WL 794871 (M.D. Pa. Mar. 24, 2008)............................................. 36

*United States v. Delle Donna,*
  552 F. Supp. 2d 475, 498 (D.N.J. 2008) .................................................. 38

*United States v. Depiro,*
  2013 WL 663303 (D.N.J. Feb. 20, 2013) ................................................ 38

*United States v. Dunning,*
  Crim. No. 07-1390, 2009 WL 3815739 (D. Ariz. Nov. 12, 2009) ........................ 27

*United States v. Earls,*
  No. 03-364, 2004 WL 350725 (S.D.N.Y. Feb. 25, 2004)......................................... 31

*United States v. Eisenberg,*
  773 F. Supp. 662 (D.N.J. 1991) ............................................................... 26

*United States v. Ellis,*
  No. 2:19-CR-693-BRM-1, 2020 WL 3962288 (D.N.J. July 13, 2020) ...................... 27

*United States v. Eufrasio,*
  935 F.2d 553 (3d Cir. 1991) ..........................................................8, 9, 12, 33

*United States v. Fallon,*
  61 F.4th 95 (3d Cir. 2023) ..................................................................... 15

*United States v. Faux,*
  Crim. No. 14-28, 2015 WL 1190105 (D. Conn. Mar. 16, 2015) ............................. 27

*United States v. Ferguson,*
  478 F. Supp. 2d 220 (D. Conn. 2007) .................................................... 27

*United States v. Gasperini,*
  No. 16-CR-441 (NGG), 2017 WL 2399693 (E.D.N.Y. June 1, 2017) ..................... 39

*United States v. Giampa,*
  904 F. Supp. 235 (D.N.J. 1995) ............................................................. 32

*United States v. Gibson,*
  875 F.3d 179 (5th Cir. 2017) ................................................................. 18

*United States v. Giffen,*
  379 F. Supp. 2d 337 (S.D.N.Y. 2004) .................................................... 31

*United States v. Golden,*
  2023 WL 2446899 (3d Cir. Mar. 10, 2023).................................................... 20, 21

*United States v. Gray,*
  648 F.3d 562 (7th Cir. 2011) ................................................................. 30

*United States v. Gross,*
  424 F. Supp. 3d 800 (C.D. Cal. 2019) ................................................................... 28

*United States v. Hart,*
  273 F.3d 363 (3d Cir. 2001) ................................................................................... 11

United States v. Hazelwood,
  Crim. No. 10-150, 2011 WL 2565294 (N.D. Ohio June 27, 2011) ......................... 27

*United States v. Higgs,*
  713 F.2d 39 (3d Cir. 1983) ..................................................................................... 31

*United States v. Hodge,*
  211 F.3d 74 (3d Cir. 2000) ............................................................................... 19, 20

*United States v. Hsia,*
  24 F. Supp. 2d 14 (D.D.C. 1998) ............................................................................ 26

*United States v. Jordan,*
  316 F.3d 1215 (11th Cir. 2003) .............................................................................. 26

*United States v. Kane,*
  2017 WL 11461839 (E.D. Pa. Dec. 20, 2017) ........................................................ 14

*United States v. Kemp,*
  2004 WL 2757867 (E.D. Pa. Dec. 2, 2004) ............................................................ 35

*United States v. Kennedy,*
  682 F.3d 244 (3d Cir. 2012) ................................................................................... 19

*United States v. Kennedy,*
  707 F.3d 558 (5th Cir. 2013) ............................................................................ 16, 17

*United States v. Kenny,*
  462 F.2d 1205 (3d Cir. 1972) ................................................................................. 34

*United States v. Knight,*
  2013 WL 3367259 at *4-5 (E.D.P.A. July 3, 2013) ................................................ 38

*United States v. Lacerda,*
  958 F.3d 196 (3d Cir. 2020) ..................................................................................... 6

*United States v. Lacerda,*
  2013 WL 3177814 (D.N.J. June 19, 2013) ............................................................. 35

*United States v. Lane,*
  474 U.S. 438 (1986) ................................................................................................. 8

*United States v. Leon,*
    No. 1:08-CR-65-1, 2008 WL 4966904 (D. Vt. Nov. 18, 2008) ............................... 39

*United States v. Liveoak,*
    377 F.3d 859 (8th Cir. 2004) .................................................................. 10

*United States v. Lore,*
    430 F.3d 190 (3d Cir. 2005) ............................................................... 9, 11

*United States v. Mariani,*
    7 F. Supp. 2d 556 (M.D. Pa. 1998) ......................................................... 38

*United States v. McGill,*
    No. CR 12-112-01, 2016 WL 48214 (E.D. Pa. Jan. 5, 2016) .................................. 28

*United States v. Mmahat,*
    106 F.3d 89 (5th Cir. 1997) .................................................................. 26

*United States v. Mohammad,*
    Crim. No. 10-389, 2012 WL 1605472 n.3 (N.D. Ohio May 8, 2012)....................... 27

*United States v. Moyer,*
    674 F.3d 192 (3d Cir. 2012) ................................................................. 35

*United States v. Ohle,*
    Crim. No. 08-1109, 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011) ........................ 27, 30

*United States v. Omoruyi,*
    260 F.3d 291 (3d Cir. 2001) ................................................................. 16

*United States v. Palma-Ruedas,*
    121 F.3d 841 (3d Cir. 1997) ............................................................... 9, 11

*United States v. Pelullo,*
    399 F.3d 197 (3d Cir. 2005) ............................................................... 24, 26

*United States v. Persico,*
    621 F. Supp. 842 (S.D.N.Y. 1985) ......................................................... 13

*United States v. Pollen,*
    978 F.2d 78 (3d Cir. 1992) .................................................................. 20

*United States v. Quintero,*
    38 F.3d 1317 (3d Cir. 1994) .................................................................. 9

*United States v. Rigas,*
    605 F.3d 194 (3d Cir. 2010) ................................................................. 20

*United States v. Riley,*
    621 F.3d 312 (3d Cir. 2010) ............................................................. 6, 7, 14

*United States v. Rosa,*
    891 F.2d 1063 (3d Cir. 1989) ........................................................... 33, 36

*United States v. Rubin/Chambers, Dunhill Ins. Servs.,*
    825 F. Supp. 2d 451 (S.D.N.Y. 2011) ................................................... 27

*United States v. Rucker,*
    596 F.2d 899 (2d Cir. 1978) ................................................................ 10

*United States v. Runyan,*
    290 F.3d 223 (5th Cir. 2002) ........................................................... 24, 26

*United States v. Saadey,*
    393 F.3d 669 (6th Cir. 2005) ............................................................... 10

*United States v. Saffarinia,*
    2020 WL 224599 (D.D.C., Jan. 15, 2020) ............................................ 26

*United States v. Sampson,*
    2012 WL 214707 (M.D. Pa. Jan. 24, 2012) .......................................... 38

*United States v. Sandini,*
    888 F.2d 300 (3d Cir. 1989) .............................................................. 8, 12

*United States v. Santos,*
    553 U.S. 507 (2008) ............................................................................ 17

*United States v. Simpson,*
    Crim. No. 09-249, 2011 WL 978235 (N.D. Tex. Mar. 21, 2011) ............ 27

*United States v. Singh,*
    Crim. No. 12-121, 2012 WL 2501032 (E.D.N.Y. June 27, 2012) ........... 31

*United States v. Skilling,*
    554 F.3d 529 (5th Cir. 2009) ...................................................26, 28, 30

*United States v. Smith,*
    776 F.2d 1104 (3d Cir. 1985) .............................................................. 33

*United States v. Smukler,*
    330 F. Supp. 3d 1050 (E.D. Pa. 2018) ................................................. 37

*United States v. Sophie,*
    900 F.2d 1064 (7th Cir. 1990) .............................................................. 9

*United States v. Spitler,*
   800 F.2d 1267 (4th Cir. 1986)................................................................. 10

*United States v. Starusko,*
   729 F.2d 256 (3d Cir. 1984) ............................................................. 27, 28

*United States v. Tejada,*
   Crim. No. 12-312, 2013 WL 3786299 (D.N.J. July 17, 2013) ................................ 31

*United States* v. *Tyler,*
   124 F. App'x 124 (3d Cir. 2005) ............................................................ 14

*United States v. Urban,*
   404 F.3d 754 (3d Cir. 2005) ..........................................................passim

*United States v. Velasquez,*
   772 F.2d 1348 (7th Cir. 1985)................................................................. 7

*United States v. W.R. Grace,*
   401 F. Supp. 2d 1069 (D. Mont. 2005) ..................................................... 27

*United States v. Wabo,*
   290 F. Supp. 2d 486 (D.N.J. 2003) ......................................................... 36

*United States v. Warshak,*
   631 F.3d 266 (6th Cir. 2010) ........................................................... 26, 29

*United States v. Welch,*
   656 F.2d 1039 (5th Cir. 1981)................................................................. 7

*United States v. Wynn,*
   61 F.3d 921 (D.C. Cir. 1995)................................................................. 18

*United States v. Voigt,*
   89 F.3d 1050, 1096 (3d Cir. 1996) ......................................................... 11

*United States v. Zolp,*
   659 F. Supp. 692 (D.N.J. 1987) ........................................................ 33,35

*Zafiro v. United States,*
   506 U.S. 534 (1993)...............................................................8, 10, 11, 14

## Statutes

18 U.S.C. § 1956(a)(1)(B) .................................................................... 18
18 U.S.C. § 1956(h) .......................................................................... 14
18 U.S.C. § 1957.............................................................................. 18
18 U.S.C. § 1957(a) ...................................................................... 15, 18

## <u>Rules</u>

Fed. R. Crim. P. 8..................................................................................... 6
Fed. R. Crim. P. 14................................................................................... 8
Fed. R. Crim. P. 16(b) ........................................................................... 39

## I.    **PRELIMINARY STATEMENT**

In advance of trial, defendants Adrienne Ponzo and James Wessels (hereinafter "defendants") bring a variety of motions to dismiss certain counts of the Indictment, for severance, and for a bill of particulars.[1]  *See* Dkt. Nos. 51, 52, 53.  For the reasons that follow, defendants' motions should be denied.  Additionally, the Government is entitled to reciprocal discovery and statements of potential defense witnesses.  The Government thus requests that the defendants produce reciprocal discovery immediately and any statements of potential witnesses at the time of Jencks disclosures.

## II.    **FACTUAL BACKGROUND**

Defendants Eric Rivera, Adrienne Ponzo, and James Wessels are charged with various crimes arising out of their participation in a scheme to fraudulently obtain COVID-19 small business relief loans through federal government programs referred to as the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program, and to launder the proceeds.  They financially enriched themselves by obtaining PPP and EIDL loans through the submission of fraudulent loan applications for companies with little or no operations, that included false statements about the non-operating companies' number of employees, revenues, and expenses, and by providing false documentation.  Indictment Count One ¶ 3; Count 5 ¶ 3.

### A.  The PPP and EIDL Programs.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a

---

[1] Defendant Eric Rivera has not joined defendant Ponzo's and Wessels' motions and has not filed any pretrial motions of his own.  In correspondence with the Government, Rivera's counsel indicated that he was not planning to file any pretrial motions.

federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  Indictment ¶ 1.  To obtain a PPP loan, a small business needed to submit an application to a participating lender that included information such as its average monthly payroll expenses and number of employees. *Id.*  These figures were used to determine the business's eligibility and to calculate the amount of money the business was eligible to receive under the PPP.  *Id.*  In addition, businesses applying for a PPP loan had to provide documentation showing, *inter alia*, their payroll expenses.  *Id.*  Loans under $150,000 were forgivable upon a certification that the borrower had spent a certain percentage of the loan proceeds on payroll costs or other qualifying expenses.  *Id.*

The CARES Act also authorized the U.S. Small Business Administration to provide EIDLs of up to $2 million to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic.  *Id.*  To qualify, an applicant business needed to submit information to the SBA, including the business's revenues, number of employees, and cost of goods sold, and also needed to submit documentation.  *Id.*  The SBA relied on the application and the supporting documentation to determine eligibility and the amount of the EIDL loan.  *Id.*

**B. Defendants' Scheme to Defraud the PPP and EIDL Programs.**

From the middle of 2020 through the end of 2021, the defendants, Rivera, Ponzo

and Wessels, joined with other co-conspirators to defraud the PPP and EIDL programs. Each played a different, yet important role, in the scheme. Defendant Rivera spearheaded and orchestrated the scheme by recruiting individuals who controlled entities that were active businesses on paper, yet had little or no operations, employees, or expenses. Indictment, Count 1, ¶¶ 9-11; Count 2, ¶¶ 4-6. He agreed to submit fraudulent applications for PPP and EIDL loans on behalf of the non-operating companies in exchange for a share of the loan proceeds. Count 1, ¶¶ 9-17; Count 2, ¶¶ 4-10. As part of the scheme, Rivera also obtained PPP loans based on fraudulent applications for two non-operating businesses that he personally controlled. Count 1, ¶¶ 5-8.

Rivera did not prepare the fraudulent applications and false supporting documentation himself. For that, he enlisted the assistance of co-conspirator Lisa Smith,[2] and co-defendants Ponzo and Wessels. Smith prepared and submitted the fraudulent PPP applications, most of which were submitted to KeyBank, where another co-conspirator, Tommy Hawkins,[3] worked and facilitated the fraud. *Id.* ¶¶ 5, 7, 10, 12-17. Smith prepared fake bank statements that were submitted with some of the fraudulent PPP applications. Count 1, ¶¶ 7, 15. Smith, in turn, enlisted Wessels to prepare fake IRS Forms 941. Count 1, ¶¶ 6, 14. PPP lenders required

---

[2] Smith, identified as "CC-3" in the Indictment, has pleaded guilty to an Information charging her with bank fraud conspiracy. *See United States v. Smith*, Crim. No. 24-469 (KMW).

[3] Hawkins has pleaded guilty to an Information charging him with bank fraud conspiracy. *See United States v. Hawkins*, Crim. No. 24-358 (KMW). On October 24, 2024, this Court sentenced Hawkins to 65 months' incarceration for his role in the conspiracy.

documentation that the businesses had paid the wages they claimed to have paid. Forms 941 are quarterly employer's tax returns and show the amount of wages that a company paid in each quarter. *Id.* Most of the non-operating companies had not filed Forms 941 because they had no employees and paid no wages. So Wessels forged Forms 941, which Smith submitted as part of the fraudulent PPP applications. Smith paid Wessels a flat fee of a few hundred dollars per fake tax form he prepared. *Id.*

Ponzo prepared and submitted the fraudulent EIDL applications for the individuals and non-operating businesses referred to her by Rivera. Count 2, ¶¶ 5-8. Ponzo created, or caused to be created, fake documents such as bank statements that she submitted as part of the fraudulent EIDL applications. *Id.* ¶ 7.

Many of the same individuals recruited by Rivera applied for PPP loans through Smith and Wessels, and EIDL loans through Ponzo. Those individuals include William Ingram,[4] Yasha Barjona,[5] and others. Ingram's companies received PPP loans that are the basis for the substantive bank fraud counts charged against Rivera and Wessels in Counts 2-4, and an EIDL loan that is the basis for the substantive wire fraud count charged against Rivera and Ponzo in Count 7. Barjona's company received an EIDL loan that is the basis for the substantive wire fraud count charged against Rivera and Ponzo in Count 6 and also obtained two PPP loans that Rivera and Smith submitted.

---

[4] Ingram has pleaded guilty to an Information charging him with bank fraud conspiracy. *See United States v. Ingram*, Crim. No. 23-537 (KMW).

[5] Barjona has pleaded guilty to an Information charging him with bank fraud conspiracy. *See United States v. Barjona*, Crim. No. 23-546 (KMW).

### C. Defendants' Money Laundering Conspiracies With the PPP and EIDL Proceeds.

Two money laundering conspiracies are also charged in the Indictment. Both involve proceeds from the PPP and EIDL conspiracies charged in Counts 1 and 2. Count 8 charges defendant Wessels with conspiring with Smith, Ingram, and another co-conspirator (CC-2) to conducting financial transactions with the intent to promote the carrying on of specified unlawful activity. The Indictment charges that Wessels structured the spending of the PPP loan proceeds received by Ingram and CC-2 to conceal that the proceeds actually were being spent on non-payroll expenses. Count 8, ¶ 3. Wessels created fake payroll checks and sent them to Ingram and CC-2. *Id.* ¶ 4-8. Ingram and CC-2 distributed the fake payroll checks to friends and family members, who cashed the checks and returned the majority of the cash to Ingram and CC-2. *Id.* ¶¶ 8-11. The PPP lender subsequently forgave these PPP loans based on forgiveness applications that falsely stated that most of the loan proceeds were spent on payroll expenses. *Id.* ¶ 12.

Count 9 charges defendants Rivera and Ponzo with conspiring with each other and with Smith to distribute the fraudulent loan proceeds. After KeyBank and SBA approved the PPP and EIDL loans, Rivera received payments of 15 to 50 percent of the loan proceeds, via wire transfer or check, for his role in orchestrating this scheme. Count 9, ¶¶ 4-6. Rivera, in turn, wired a portion of the loan proceeds to Smith and to defendant Ponzo for their roles in the scheme. *Id.* ¶¶ 7-8. The Indictment also charges Rivera and Ponzo with engaging in substantive money laundering transactions of over $10,000. Counts 9-17.

### D. Procedural History.

In July 2023, defendants Rivera, Ponzo, and Wessels were charged by criminal complaint.  *See United States v. Rivera*, Mag. No. 23-2051 (AMD); *United States v. Ponzo*, Mag. No. 23-2053 (AMD); *United States v. Wessels*, Mag. No. 23-2054.  After they were charged, the Government provided voluntary discovery consisting of key documents, and also offered plea agreements to each defendant.  In April 2024, the grand jury returned the Indictment.  The Government subsequently provided Rule 16 discovery to all defendants.

## III.  <u>ARGUMENT</u>

### A.  The Court Should Not Sever Ponzo or Ponzo's Counts From Wessels or Wessels' Counts.

Ponzo and Wessels both seek severance of Counts 1-4 and 8, from Counts 5-7 and 9-17.  For the following reasons, the Court should decline to order two separate trials.

### 1.  The Charges Were Properly Joined Under Rule 8

Fed. R. Crim. P. 8 provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."  Joinder of defendants is appropriate if the charges either "originate 'in the same act or transaction,' or have otherwise been integral to one another.  *United States v. Lacerda*, 958 F.3d 196, 224 (3d Cir. 2020) (*quoting United States v. Riley*, 621 F.3d 312, 334 (3d Cir. 2010)).  "Under Rule 8(b) there must be a transactional nexus between the defendants for the counts to be

properly joined.  *Riley*, 621 F.3d at 334; *see also United States v. Welch*, 656 F.2d 1039, 1049 (5th Cir. 1981) ("Separate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions.").

The charges in the Indictment satisfy Rule 8.  The PPP fraud conspiracy, the EIDL conspiracy, and the money laundering conspiracies all arise from the same acts or transactions.  Rivera's recruitment of non-operating business owners provided the pool of businesses for both the PPP and EIDL fraudulent loan applications.  Indeed, many of the same recruits and the same businesses submitted applications and received both EIDL and PPP loans.  Further, the proceeds from both the EIDL and PPP conspiracies flowed from the business owners to the same place—Rivera's bank accounts—before they were distributed to other co-conspirators.  The money laundering conspiracy charged in Count 8 involves the proceeds from certain PPP loans.  The money laundering conspiracy charged in Count 9 alleges that the proceeds from both the PPP and EIDL conspiracies were funneled to Rivera's bank accounts, and then to Smith and Ponzo.  Moreover, evidence at trial will show that Rivera, Ponzo, and Smith all communicated with each other in December 2020 and January 2021 regarding their common objective of defrauding the PPP and EIDL programs.  Put simply, the PPP and EIDL conspiracies were not misjoined because they could have been charged as one conspiracy to defraud government COVID-19 small business relief loan programs.  *See United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985) ("The indictment need not charge a single overarching conspiracy, provided the separate conspiracies it charges arise from a common plan or scheme and so could alternatively have been charged as a single conspiracy.").

## 2.    The Charges Should Not be Severed Under Rule 14

"If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14.  The rule commits the relief to be granted, if any, "to the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993).  It is a "fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro*, 506 U.S. at 537); *see also United States v. Sandini*, 888 F.2d 300, 306 (3d Cir. 1989) ("[I]n cases of defendants jointly indicted ordinarily there should be a single trial.").  Indeed, "[j]oint trials 'play a vital role in the criminal justice system.'" *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).

This is true for several reasons.

*First*, joint trials promote systemic judicial efficiency.  *See, e.g.*, *United States v. Lane*, 474 U.S. 438, 449 (1986) (noting that Supreme Court has "long recognized that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial"); *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) ("Ordinarily, defendants jointly indicted should be tried together to conserve judicial resources."); *United States v. Blassingame*, 197 F.3d 271, 286 (7th Cir. 1999) (systemic interest in joint trials includes "reducing the waste of judicial and prosecutorial time").

*Second*, "[i]n joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials.  From such a

perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing." *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987). This "more complete view," in turn, "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson*, 481 U.S. at 210; *see also, e.g.*, *United States v. Sophie*, 900 F.2d 1064, 1083 (7th Cir. 1990) (joint trials have the benefit of presenting the "total story" to the jury as opposed to bits and pieces being presented to several juries).

*Third*, separate trials often "randomly favor[] the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson*, 481 U.S. at 210. This "advantage" is sometimes only tactical, but sometimes it is far more sinister. Separate trials "requir[e] victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Id.*

For all these reasons, Rule 14 "places the burden of showing prejudice from the joinder on the defendant seeking severance." *Eufrasio*, 935 F.2d at 568 (citing *De Peri*, 778 F.2d at 983). Indeed, due to the powerful interests favoring joint trials, "defendants have a heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994); *see also United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993) (defendant seeking severance bears "a heavy burden").

This "heavy burden" requires the defendants to prove "that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." *Urban*, 404 F.3d at 775; *see also United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005); *United States v. Palma-Ruedas*, 121 F.3d 841, 854 (3d Cir. 1997).

9

Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added). This is definitively not an "if prejudice, then severance" causation analysis. In fact, the Supreme Court has held explicitly that even a showing of some prejudice is insufficient to justify severance: "Rule 14 does not require severance even if prejudice is shown." *Id.* at 538-39. Instead, as noted above, to obtain a severance, the defendant must "show facts demonstrating that he will be *so severely prejudiced* by a joint trial that it would in effect deny him a fair trial." *United States v. Rucker*, 596 F.2d 899, 902 (2d Cir. 1978) (emphasis added). The defendant must prove to the Court that a failure to sever would result in a "manifestly unfair trial, beyond a mere showing that he would have had a better chance of acquittal with separate trials." *Gov't of Virgin Islands v. Sanes*, 57 F.3d 338, 341-42 (3d Cir. 1995); *see also United States v. Liveoak*, 377 F.3d 859, 864 (8th Cir. 2004) ("To grant a motion for severance, the necessary prejudice must be severe or compelling.") (quotation marks omitted); *United States v. Saadey*, 393 F.3d 669, 678–79 (6th Cir. 2005) (defendants must show "compelling, specific, and actual prejudice" from joinder); *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir. 1986) (requiring defendant to sustain the "extremely difficult burden" of demonstrating such substantial prejudice that he would in effect be denied a constitutionally fair trial). As the Fifth Circuit has put it, the "defendant seeking severance must demonstrate a specific and compelling prejudice that resulted in an unfair trial and such prejudice must be of a type against which the trial court was

unable to afford protection." *United States v. Causey*, 185 F.3d 407, 416 (5th Cir. 1999).

The Supreme Court has imposed such a heavy burden because there is much prejudice against which a district court can protect, by crafting remedies short of severance. *See Zafiro*, 506 U.S. at 539 (noting that "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice"). The tailoring of the relief to be granted, if any, is reserved for "the district court's sound discretion." *Id.* at 539. Most often, this relief consists of limiting instructions to the jury, directing jurors "to compartmentalize the evidence by considering the evidence separately as to each defendant and each count." *United States v. Lore*, 430 F.3d 190, 205-06 (3d Cir. 2005). The Supreme Court has repeatedly recognized "[t]he rule that juries are presumed to follow their instructions." *Richardson*, 481 U.S. at 211. In fact, the Third Circuit regards limiting instructions as "persuasive evidence that refusals to sever did not prejudice the defendants." *Lore*, 430 F.3d at 206 (quotation marks omitted). Thus, the Third Circuit has routinely affirmed the denial of severance motions where District Courts provided appropriate limiting instructions. *See id.*; *see also Urban*, 404 F.3d at 776; *United States v. Hart*, 273 F.3d 363, 370 (3d Cir. 2001); *Palma-Ruedas*, 121 F.3d at 854; *United States v. Voigt*, 89 F.3d 1050, 1096 (3d Cir. 1996); *Console*, 13 F.3d at 655-56.

Ponzo and Wessels cannot meet the "heavy burden" required to justify severance. Ponzo argues that the allegations against Rivera and Wessels are more serious because they involve more loans, participants, and co-conspirators, and a larger amount of loan proceeds. Dkt. No. 51, at 13-16. Ponzo mistakes the scope of

the conspiracy when she asserts that only the two loans charged as substantive wire fraud counts were a part of the charged EIDL conspiracy.  In fact, the EIDL wire fraud conspiracy involved more loans and applications than the two charged substantive counts.  Although Ponzo suggests that she would be prejudiced from being tried with Rivera and Wessels, she does not articulate how, and certainly has not met the heavy burden required to justify severance.

Wessels asserts that he will be prejudiced from sitting through evidence of crimes with which he was not charged, Dkt. No. 53-2, at 5-6, but there is no reason to believe Wessels will be prejudiced or that limiting instructions and jury charges will not be heeded.  To start, Wessels' crimes of bank fraud and money laundering are every bit as serious as the crimes he is not charged with (wire fraud and another money laundering conspiracy).  Besides, the Third Circuit has stated that "[n]either a disparity in evidence, nor introducing evidence more damaging to one defendant than others, entitles seemingly less culpable defendants to severance." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).  Prejudice warranting severance does not arise "just because all evidence adduced is not germane to all counts against each defendant or some evidence adduced is more damaging to one defendant than other." United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993) (internal citations omitted). "Undoubtedly, there are many criminal cases in which defendants are tried together on different counts, so that all the evidence is not germane to all the counts against each defendant." *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989).  Rather, the defendant must point to "[s]ome exacerbating circumstances, such as the jury's inability to 'compartmentalize' the evidence . . . ." *United States v. Adams*, 759 F.2d

1099, 1112-13 (3d Cir. 1985). Precisely because Wessels was not involved in every aspect of the charged frauds, he cannot make any showing that the jury will be unable to compartmentalize the evidence. *See, e.g.*, *United States v. Persico*, 621 F. Supp. 842, 853 (S.D.N.Y. 1985) ("In this case, the Court sees no substantial danger that the jury will be misled as to what charges pertain to a particular defendant. The charges in this case can be readily broken down into twelve distinct areas of criminal activity. These areas relate to the same enterprise, but are readily segregable."). The jury will be able to understand that Wessels was involved in the submission of fraudulent PPP loans, but not fraudulent EIDL loans.

Wessels also complains that a joint trial would require the admission of co-conspirator statements against one defendant but not all. Dkt. No. 53-2, at 6. Wessels' position that the charged wire fraud conspiracy is separate makes it unlikely that co-conspirators who did not interact with him and did not conspire with him will offer any statements against him. Given that there will be, at most, three defendants at trial, the jury should have little if any trouble compartmentalizing evidence that pertains to one charge or one defendant but not the others.

Finally, Wessels asserts, without any supporting evidence or caselaw, that the PPP bank fraud conspiracy he is charged with is actually multiple conspiracies and he did not participate in all of them. Dkt. No. 53-2, at 4-5. He seems to be under the misimpression that the Indictment charges him with conspiring to submit only the three PPP loans that underlie the substantive bank fraud charges. That assumption is incorrect. The Indictment alleges, and the evidence at trial will prove, that he furnished fake tax documents for most of the fraudulent loan applications that Rivera was involved in coordinating.

Although defendants have not met their burden of demonstrating a specific and compelling prejudice warranting severance, any purported prejudice would be outweighed by the benefits of joinder.  Joinder conserves the court's time; avoids the need to call the same witnesses twice; and avoids the need to inconvenience two sets of juries, who would hear a substantially similar story.  Because he is charged in all counts except Count 8, Rivera would need to be a defendant in two trials.  Many, if not most, of the witnesses would need to testify twice, often about the same things, including Ingram, Barjona, Smith, and other individuals who applied for loans through both Smith/Wessels and Ponzo.  These considerations provide another reason to deny the motion.  *See United States v. Kane*, 2017 WL 11461839, at *1 (E.D. Pa. Dec. 20, 2017) ("the efficiencies of a joint trial outweigh any minimal risk of prejudice").

If a joint trial risks prejudicing a defendant, "'less drastic measures, such as limiting instructions, often will suffice.'"  *United States* v. *Tyler*, 124 F. App'x 124, 127 (3d Cir. 2005) (quoting *Zafiro* v. *United States*, 506 U.S. 534 (1993)); *United States* v. *Riley*, 621 F.3d 312, 335 (3d Cir. 2010) ("[A]ny prejudice that might have resulted from the joint trial was easily cured by the District Court's jury instructions.").  Here, the Government has no objection to the Court providing appropriate limiting instructions and reading to jurors the standard "separate consideration" instruction regarding the multiple counts.  *See* Third Circuit Model Criminal Jury Instruction 3.12.

## B. The Money Laundering Counts Do Not Violate the Merger Doctrine.

Defendant Ponzo argues that the counts of the Indictment charging her with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count 9), and money

laundering, in violation of 18 U.S.C. § 1957(a) (Counts 11 and 12), fail to state a claim because the alleged laundering is not distinct from the underlying fraud. The Court should reject Defendant Ponzo's challenge to the money laundering counts. The money laundering conspiracy and substantive counts properly allege transactions involving proceeds of a complete offense, or of a completed phase of an offense. *See United States v. Fallon*, 61 F.4th 95, 120 (3d Cir. 2023). Ponzo's argument demonstrates a misunderstanding of the money laundering merger doctrine.

The underlying fraud—or a phase of it—was completed each time the Small Business Administration disbursed an EIDL loan to the purported business owner. Indictment, Count 5, ¶ 9. The Indictment alleges that the payments from the SBA to the business owners were the result of the submission of fraudulent applications and documents submitted by Ponzo to the SBA. Id. ¶¶ 4-8. Once the SBA paid the business owner, that fraud—and that phase of the wire fraud conspiracy—was complete; the SBA had been successfully defrauded. Each of the substantive money laundering counts involving Ponzo, and each of the transactions listed in the money laundering conspiracy count involving Ponzo, involved downstream transactions occurring after the business owners received payments from the SBA. Each transaction is one or two levels downstream from the payments from the SBA to the business owners and each consists of fraudulent EIDL loan proceeds.

Under binding Third Circuit precedent and caselaw from other circuits, these transactions are properly alleged as money laundering transactions separate from the underlying fraud. In *United States v. Omoruyi*, 260 F.3d 291, 296 (3d Cir. 2001), the Third Circuit held that "the money acquired through the mail fraud became 'proceeds'

15

at the time the checks were honored by the various banks."  Because "the indictment charged six counts of mail fraud based on the mailing of fraudulently obtained checks to the various banks" and "money laundering counts based upon eight subsequent teller window cash withdrawals," "the mail fraud offenses were complete as of the time the six checks were placed in the mail for delivery to the banks, and thus the money thereafter derived from the checks constituted the proceeds of the already completed offenses."  *Id.*  In *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994), the Third Circuit held that money collected from poker machines at illegal gambling establishments was "'proceeds of specified unlawful activity' within the meaning of the money laundering statute" and "any subsequent financial transaction involving these proceeds . . . could form the basis of a charge of money laundering."

*United States v. Kennedy*, 707 F.3d 558, 561-62 (5th Cir. 2013), involved a mortgage fraud scheme.  Lenders wired closing funds to a title company and then the defendants funneled a portion of the proceeds to shell companies they controlled.  The Fifth Circuit rejected an argument that money laundering convictions should be reversed because the underlying wire fraud crime was purportedly incomplete at the time the money was transferred to the shell companies.  *Id.* at 566.  The Court agreed that "the wire fraud crime was complete when the lenders transferred the loan funds" to the title company, and the indictment "charge[d] defendants with money laundering for subsequent transactions."  *Id.*  "If the entire scheme had come to a halt upon the Kennedys' receipt of the funds, the defendants would still have been guilty of the crime of wire fraud—which illustrates that the subsequent disbursements to the shell corporations have no bearing on the completion of the crime of wire fraud."  *Id.*  So too

16

here.  The money acquired by the business owners from the SBA became proceeds of a completed phase of the wire fraud conspiracy at the time the money was paid into the business owners' bank accounts.  Even if there were no further distributions of money from the business owners' bank accounts, Ponzo and Rivera still could be convicted of wire fraud and wire fraud conspiracy.  *See United States v. Chartock*, 283 F. App'x 948, 956–57 (3d Cir. 2008) (financial transactions occurring after deposit of bribe into bank account were transactions involving "proceeds" of a completed phase of honest services fraud).

Ponzo's argument that "proceeds" under the money laundering statute is defined as "net profits" leftover after paying co-conspirators—not gross proceeds— relies on outdated and superseded caselaw.  Ponzo cites *United States v. Santos*, 553 U.S. 507 (2008) and *United States v. Abdulwahab*, 715 F.3d 521 (4th Cir. 2013).  In *Santos*, the Supreme Court noted that "[t]he federal money-laundering statute does not define 'proceeds,'" determined that the term "proceeds" was ambiguous, and held, under the Rule of Lenity that "proceeds" meant "profits," and not "receipts." *Santos*, 553 U.S. at 511.  Applying *Santos*, the Fourth Circuit in *Abdulwahab* found that payment "for services that played a critical role in the underlying fraud scheme" did not constitute money laundering because those payments did not consist of net profits. *Abdulwahab*, 715 F.3d at 531.  The problem for Ponzo is that, in 2009, "[a]fter the Supreme Court decided *Santos*, Congress amended the money-laundering statute to specifically define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, ***including the gross receipts of such activity***." *Abdulwahab*, 715 F.3d at 531 (citing 18 U.S.C. §

17

1956(c)(9)) (emphasis added); *see also United States v. Gibson*, 875 F.3d 179, 190 (5th Cir. 2017) ("Here, the Gibsons rely on a splintered Supreme Court opinion that attempted to determine whether the term, 'proceeds,' in a prior version of the money laundering statute meant 'receipts' or 'profits.'  But Congress effectively overruled *Santos* by amending the statute to define 'proceeds' more broadly, and that law took effect on May 20, 2009.").  Because, since 2009, proceeds are defined as "gross receipts" from a crime, and gross receipts were created when the lender or SBA deposited the loan proceeds into the applicant's bank account, the transactions charged as money laundering in the Indictment comprise "proceeds" and do not merge with the underlying fraud.

Ponzo's contention that the Indictment is impaired because it does not allege concealment is similarly misguided because she discusses and sets forth the elements of a *different* money laundering statute than the one she is charged with.  Ponzo is charged with violating 18 U.S.C. § 1957, which makes it unlawful to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, and with conspiring to violate 18 U.S.C. § 1957.  She is not charged with concealing or disguising the nature, location, source, ownership, or control of the proceeds.  *See* 18 U.S.C. § 1956(a)(1)(B); *see also United States v. Wynn*, 61 F.3d 921, 926 (D.C. Cir. 1995) ("18 U.S.C. § 1957(a) . . . differs from section 1956 in two critical respects: It requires that the property have a value greater than $10,000, but it does not require that the defendant know of a design to conceal aspects of the transaction.").  The Indictment properly alleges that defendants Rivera and Ponzo engaged in monetary transactions of more than $10,000

18

involving proceeds of a wire fraud or completed phases of wire fraud conspiracy, and the motion to dismiss should be denied.

### C. The Wire Fraud Counts and the Money Laundering Counts Are Not Multiplicitous.

As a derivative to her argument that there is a merger problem, defendant Ponzo asserts that the wire fraud counts and the money laundering counts are multiplicitous.  But Ponzo rightly concedes that they "are not multiplicitous per se or by definition."  Because the wire fraud counts and the money laundering counts plainly are not multiplicitous, the Court should deny this motion.

### 1. The Wire Fraud Counts and the Money Laundering Counts Are Not Multiplicitous

"Multiplicity is the charging of a single offense in separate counts of an indictment." *United States v. Kennedy*, 682 F.3d 244, 254–55 (3d Cir. 2012) (citing *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir.1978)).  "[T]he test for multiplicity examines whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts." *Id.*  "The basic inquiry in determining whether counts of an indictment are truly separate, and not multiplicitous, is whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate." *Carter*, 576 F.2d at 1064.

"To determine whether the offenses grow out of the same occurrence, [the Third Circuit] appl[ies] the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932)." *United States v. Hodge*, 211 F.3d 74, 78 (3d Cir. 2000).  "In *Blockburger* the Supreme Court states that, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there

are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *United States v. Rigas*, 605 F.3d 194, 204 (3d Cir. 2010) (quoting *Blockburger*, 284 U.S. at 304). "In other words, under the *Blockburger* test, a court looks to the statutory elements of the crime charged to determine if there is any overlap." *Id.* (internal quotation marks and citation omitted).

Applying *Blockburger*'s "same evidence" test, the wire fraud counts and the money laundering counts are not multiplicitous because there is not complete overlap of the statutory elements between wire fraud (or wire fraud conspiracy) and money laundering (or money laundering conspiracy). Each count requires proof of elements that the other does not. Ponzo does not argue otherwise, so the motion should be denied.

### 2. Alternatively, a Multiplicity Claim is Not Amenable to a Ruling on a Motion to Dismiss

In any event, the proper time to bring a multiplicity challenge is at sentencing. "The primary danger of multiplicity is excessive punishment." *United States v. Golden*, 2023 WL 2446899, at *3 (3d Cir. Mar. 10, 2023) (*citing United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992)); see also *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (defining the interest protected in the multiple punishment context as "ensuring that the total punishment [does] not exceed that authorized by the legislature"); *Hodge*, 211 F.3d at 78 ("If the two offenses grow out of the same occurrence then multiple punishments are impermissible.") (emphasis added). "Accordingly, the proper remedy is merging counts at sentencing." *Pollen*, 978 F.2d at 78 (citing *United States v. Centeno*, 793 F.3d 378, 392 (3d Cir. 2015)). In *Golden*, the Third Circuit held a multiplicity challenge to conviction and sentencing was moot because the sentencing

court merged the two counts of conviction for purposes of sentencing, which "remedied any double jeopardy concerns." 2023 WL 2446899, at *3. If the Court does not immediately rule that the wire fraud counts and the money laundering counts are not multiplicitous, it should defer a ruling until sentencing in the interest of judicial economy, because the jury's verdict or the Court's sentence may moot the issue.

### D. The Court Should Deny Ponzo's Brady Motion.

Defendant Ponzo moves to "compel production" pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. No. 50. She complains that the "burdensome" nature of the discovery provided by the Government requires the Government to identify *Brady* material. She also seeks "immediate production" of impeachment material of any Government law enforcement witnesses. The Court should deny the motion. Ponzo mischaracterizes the comprehensive discovery that the Government has provided and is not entitled to the relief she seeks.

### 1.    The Government's Discovery

After defendants were indicted, the Government provided comprehensive discovery that went beyond the Government's Rule 16 obligations, permits defendants to prepare for trial, allows defendants to identify any *Brady* material, and provides guidance and the ability to identify relevant materials. A summary of discovery follows so that the Court can rule on Ponzo's motion with a full understanding of the facts.

**Memoranda of Interview:** Even though Rule 16 does not require the production of memoranda of interview—which need not be disclosed until shortly before trial—the Government produced all memoranda of interview of individuals who had been interviewed by law enforcement during the investigation that led to the charges. These memoranda were provided in text-searchable and database-loadable

format.  The Government also provided an index to all of its materials that easily allows defendants to see which individuals were interviewed and what they said.

**Materials obtained via grand jury subpoena:** The Government produced records obtained via grand jury subpoena.  This category includes bank records containing PPP loan applications and documents sufficient to show how the loan proceeds were spent and distributed.  This category also includes all relevant EIDL loan records from the SBA.  Like the MOIs, the subpoena returns are indexed, which allows the defendants to identify materials produced by the SBA, KeyBank, and other entities.

**Audio recordings of interviews:** The Government produced audio recordings of certain interviews that were recorded.  The audio recordings are also indexed.

**Search warrant documents and returns**: The Government produced search warrant materials, including affidavits, for all search warrants executed during the investigation.  Search warrant returns have been provided to the defendants in the same format the Government received them, and they are indexed.

The Government also provided targeted pre-indictment discovery to the defendants after they were charged by complaint in 2023.  This more limited discovery consisted of what the Government identified as the most relevant evidence.  The Government produced to Ponzo the EIDL applications and loan documents for three fraudulent EIDL loans that Ponzo submitted, as well as written communications between Ponzo and certain co-conspirators, including Rivera, Barjona, and Smith.  *See* Ex. A (informal discovery letter to Troy Archie dated September 6, 2023).  The Government produced to Wessels communications between Wessels, William Ingram, and CC-2 concerning the conspiracy charged in Count 8 of the Indictment, and written communications between Wessels and an individual regarding fraudulent tax forms that Wessels prepared for the individual's PPP loan application.  Ex. B (informal discovery letter to Mark Catanzaro dated August 8, 2023).  The Government also provided written communications between Wessels and Smith regarding their conspiracy to prepare fake tax forms and other documents as part of the PPP fraud

conspiracy charged in Count 1 of the Indictment.  Ex. C (informal discovery letter to Mark Catanzaro dated February 6, 2024).  In those 679 pages of text messages, Wessels and Smith discussed by name most of the companies for which Wessels created fraudulent tax forms.[6]

Defendants' preparation for trial and search for exculpatory evidence is further assisted by written plea offers, which all defendants rejected, each containing a Schedule B listing the fraudulent loans that the Government believes each defendant is responsible for.  The list includes, for each loan, the lender, loan number, and amount, which the defendants can use to search the discovery for applications and documents regarding those loans.  While the Government reserves the right to present evidence of other loans at trial, the lists are a very good indication of the loans at issue in this case.

In the approximately 18 months since the Government provided voluntary post-complaint discovery, and the 8 months since the Government provided Rule 16 discovery, no defendant raised any questions or issues regarding the discovery with the Government before filing these motions.

      **2.**      **The Government has produced discovery in a standard, reviewable format and has no additional obligation to scour**

---

[6] The Government produced to Rivera (1) PPP applications and loan documents for many of the fraudulent PPP and EIDL loans; (2) bank records detailing the transfer and spending of PPP and EIDL loan proceeds; and (3) written communications between Rivera and his co-conspirators.  Ex. D (informal discovery letter to Thomas Burke dated August 8, 2023).

**the discovery already produced to Ponzo for potential Brady material**

The Government is fully cognizant of its obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The record reflects exactly that: the Government has disclosed, in an abundance of caution, material in its possession that could arguably be considered favorable to the defense. Should any additional information come to light, the Government will continue to make prompt disclosures.

Ponzo criticizes the Government for engaging in an "impermissible document dump" and requests an order compelling the Government to identify the documents produced in discovery which are exculpatory. Granting this request would not only upend settled case law in this district and the Third Circuit but also establish a substantial new and unworkable discovery regime on the Government.

Under controlling Third Circuit case law, while *Brady* imposes affirmative obligations on the Government regarding the *disclosure* of exculpatory information, it "impose[s] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials ***that are so disclosed***." *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) (emphasis added). "*Brady* does not require the government 'to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own.'" *Dukes v. Pappas*, 405 F. App'x 666, 669 (3d Cir. 2010) (unpublished) (quoting *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002)).

*Pelullo*'s rule has not, as Ponzo argues, been "overruled." Dkt. No. 50, at 14-16. The subsequent cases cited by Ponzo held that the Government could not *withhold* exculpatory material in its possession just because the defendant, with due diligence,

could have obtained the information from another source. *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 292 (3d Cir. 2016). They did not create a rule that the Government is required to search for and find *Brady* material in discovery that it has provided to the defendants. *See id.* ("We also got it right in Pelullo when we rejected defendant's argument that certain documents were *Brady* material and somehow 'suppressed' when the government had made the materials available for inspection.").

Here, the Government has provided extensive discovery and has produced documents electronically, in a searchable format, and in the same format it received them. The Government also has provided an index that provides guidance to the defense regarding where certain material may be found in the production, all in a manner consistent with controlling case law and the Court's Discovery Order. This material includes reports of witness interviews, audio recordings of witness interviews, loan applications and documents, bank records, and other items. The Government also assisted Ponzo and the other defendants by identifying the most important evidence, including loan files and the defendants' written communications with co-conspirators. The Government also included in written plea offers a list of loans (including loan numbers and lender) that the Government believes each defendant was associated with.

Ponzo claims that this is not enough: she wants the Court to order the Government to pull out anything within those materials that is or could be favorable to the defense. Momentarily leaving aside that the courts in this Circuit have rejected imposing such an obligation on the Government, Ponzo ignores the plain fact that the Government cannot know ***all*** of the material she could consider favorable. Ponzo has

not advised the Government what she would consider "favorable" material in this case and the reasons for the position.  Nor has she described in any detail her defense so that the Government could better assess what material may fall within the ambit of *Brady*.

Instead, to support her argument, Ponzo disregards controlling precedent and cites several non-binding district court opinions from outside the Third Circuit that required the Government to identify *Brady* material that it was aware of in the production to the defendant.  *See United States v. Saffarinia*, 2020 WL 224599 (D.D.C., Jan. 15, 2020); *United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. 1998); *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864, at *6 (S.D.W. Va. June 12, 2015).  But contrary to these cases—which amount to outlier decisions— every circuit court and most district courts that have assessed similar requests, including the Third Circuit and the District of New Jersey, have rejected Ponzo's argument.  *See Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011); *United States v. Warshak*, 631 F.3d 266, 295-98 (6th Cir. 2010);  *United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009), *reversed in part on other grounds*, 561 U.S. 358 (2010); *Pelullo*, 399 F.3d at 212; *United States v. Jordan*, 316 F.3d 1215, 1253-54 (11th Cir. 2003); *Runyan*, 290 F.3d at 245-46; *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997), *abrogated on other grounds*, *United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004); *United States v. Eisenberg*, 773 F. Supp. 662, 687-88 (D.N.J. 1991) (rejecting defendant's contention "that he should not have to expend the effort

26

required to review a substantial number of documents in order to ascertain whether

they contain exculpatory information").[7]

"The Third Circuit has emphasized a timely disclosure obligation with respect to

*Brady* material and has not placed a further duty on prosecutors to label that material

for the defense."  *United States v. Ellis*, No. 2:19-CR-693-BRM-1, 2020 WL 3962288, at

*2 (D.N.J. July 13, 2020) (citing *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir.

1984)).  In *Ellis*, Judge Martinotti found that the Government "met its obligation and

lack[ed] the further duty to assist Ellis in finding and designating material favorable

to the defense" where it "organized the productions in individual, separate folders and

with an index that identified the specific source of the particular records;" (2)

identified records using the Bates-stamp system; (3) "provided the defense with

records in the same format in which the Government received them from third

parties;" and (4) "provided, whenever possible, electronic records in a searchable

---

[7] *Accord United States v. Faux*, Crim. No. 14-28, 2015 WL 1190105, at *7 (D. Conn. Mar. 16, 2015); *United States v. Mohammad*, Crim. No. 10-389, 2012 WL 1605472, at *2 n.3 (N.D. Ohio May 8, 2012); *United States v. AU Optronics Corp.*, Crim. No. 09-110, 2011 WL 6778520, at *1-*2 (N.D. Cal. Dec. 23, 2011); *United States v. Briggs*, 831 F. Supp. 2d 623, 629 (W.D.N.Y. 2011); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454-57 (S.D.N.Y. 2011); United States v. Hazelwood, Crim. No. 10-150, 2011 WL 2565294, at *20 (N.D. Ohio June 27, 2011); *United States v. Simpson*, Crim. No. 09-249, 2011 WL 978235, at *8-*9 (N.D. Tex. Mar. 21, 2011); *United States v. Ohle*, Crim. No. 08-1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011); *United States v. Dunning*, Crim. No. 07-1390, 2009 WL 3815739, at *1-*2 (D. Ariz. Nov. 12, 2009); *United States v. Ferguson*, 478 F. Supp. 2d 220, 242 (D. Conn. 2007); *Brown v. United States*, Crim. No. 02-14, 2006 WL 1582421, at *3 (M.D. Ga. June 5, 2006); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1080-81 (D. Mont. 2005).

format, such as PDFs, or in files that are loadable into a discovery platform." *Id.* That description matches the description of the Government's discovery here.

Indeed, most of the cases cited by Ponzo denied defense motions when the Government provided discovery in a similar format as here. In *Skilling*, the court viewed favorably the facts that the open file production was "electronic and searchable," was accompanied by indices, and was accompanied by a "hot documents" file that identified documents the prosecution viewed as particularly relevant to the defense. *Skilling*, 554 F.3d at 577; *see also United States v. Contech Engineered Sols. LLC*, No. 5:20-CR-481-FL-2, 2021 WL 714991, at *4 (E.D.N.C. Feb. 18, 2021) (whether an order is appropriate "turn[s] on the actions taken by the Government to facilitate the defendant's review of the production, such as whether the production is searchable and whether the Government has provided detailed indices, lists of key documents, a list of the evidence the Government expects to present at trial, and any other assistance to the defendant in navigating the production"); *United States v. McGill*, No. CR 12-112-01, 2016 WL 48214, at *10 (E.D. Pa. Jan. 5, 2016) (denying motion to require Government to find *Brady* material in disclosed materials where "[t]he discovery was provided in a form that could easily be loaded into and searched through an electronic database" and no allegation of bad faith by the Government in hiding exculpatory material); *United States v. Gross*, 424 F. Supp. 3d 800, 804 (C.D. Cal. 2019) (denying motion to require Government to find *Brady* material in disclosed

materials where "voluminous production" was searchable and accompanied by indices).

Ponzo's claim that the Government "failed to take any of the steps identified" in these cases and has not provided "any assistance" to navigate the document production is incorrect and contradicted by the record. As summarized above, defendants here have received reports of witness interviews and other documents forming the crux of the Government's case. The Government provided these materials either organized by producing party with load files, which made the documents readily accessible and searchable through a review platform, or in the form the Government received them from third parties. Ponzo appears to focus on materials originating from Apple, but those materials, while voluminous, were produced in the same format that Apple produced them to the Government. A defendant can easily identify all documents produced by the PPP lender, KeyBank, or the EIDL lender, the SBA. Because the Government also produced interview memoranda, which were produced in digital form, defendants can find in seconds which witnesses talked specifically about them. Ponzo attaches a letter from its discovery vendor stating that "[i]ndices would be useful," but the Government did provide an index of the produced materials. In addition, the Government will produce, before trial, its trial exhibits and grand jury testimony of trial witnesses.

Nor is there any basis for an allegation that the Government "larded its production with entirely irrelevant documents;" "made access to the documents unduly onerous;" or "deliberately concealed any exculpatory evidence in the information it turned over to the defense." *United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir.

2010).  If the production contained some duplicative materials, that is because the materials were provided to the defense in the same format they were provided to the Government.  The Government has not hidden exculpatory material by including irrelevant documents.  As the Seventh Circuit observed in denying a similar request by defendants in *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011), "[t]o charge prosecutors with knowledge of exculpatory evidence buried in the computer databases of institutions that collect and store vast amounts of digitized data would be an unreasonable extension of the *Brady* rule."  *Id.* at 567.

These cases make clear that the Government is neither responsible for preparing the defense, nor in a better position to identify exculpatory material than the defense.  For instance, like Ponzo here, an individual defendant in the Enron case argued that the volume of discovery prevented the effective review of the Government's disclosures.  *Skilling*, 554 F.3d at 576.  The Fifth Circuit refused to order the Government to dig favorable material out of several hundred millions of pages of documents, holding that "the government was in no better position to locate any potentially exculpatory evidence than was [the defendant]."  *Id.* at 577.  A decision in the Southern District of New York agreed:

> Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once.  Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client.  This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located.

*Ohle*, 2011 WL 651849, at *4.

Accordingly, this Court should deny Ponzo's Motion to require the Government to immediately identify documents in discovery that are *Brady* or constitute material favorable to Ponzo's defense.

> ### 3. This Court should deny as premature Ponzo's motion to compel pretrial disclosure of Giglio material and the Government will continue to abide by its Giglio obligations

The Government also is fully aware of its obligations to disclose evidence that may be used to impeach the credibility of government witnesses. See *Giglio v. United States*, 405 U.S. 150, 154 (1972). Disclosure of evidence that may be used to discredit Government witnesses is not directly exculpatory, however, and therefore need not be disclosed well in advance of trial. The Third Circuit held in *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983), that disclosure of *Giglio* material on the day that the witness in question testifies sufficiently insures a defendant's right to a fair trial, stating:

> The Brady material in this case was information that [the defendant] could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think [the defendant's] right to a fair trial will be fully protected if disclosure is made the day that the witness testifies. Disclosure at that time will fully allow [the defendant] to effectively use that information to challenge the veracity of the government's witnesses.

*Id.* Consistent with this view, federal courts routinely refuse to order pretrial production of *Giglio* materials. *See, e.g., United States v. Tejada*, Crim. No. 12-312, 2013 WL 3786299, *5-*6 (D.N.J. July 17, 2013) (Linares, J.); *United States v. Singh*, Crim. No. 12-121, 2012 WL 2501032, *6 (E.D.N.Y. June 27, 2012); *United States v. Giffen*, 379 F. Supp. 2d 337, 347 (S.D.N.Y. 2004); *United States v. Earls*, Crim. No. 03-

364, 2004 WL 350725, *8 (S.D.N.Y. Feb. 25, 2004); *United States v. Giampa*, 904 F. Supp. 235, 281-82 (D.N.J. 1995).

Ponzo fails to offer a single reason for needing impeachment material "immediately." The Government need only produce impeachment evidence within the meaning of *Giglio* sufficiently in advance of the witness's testimony to avoid delay in the trial, and a trial date has not even been set. It is, of course, the practice in this District for parties to reciprocally exchange *Giglio* and *Jencks* material approximately one or two weeks before trial, and the Government would agree to a similar exchange in this case. The Court should thus deny Ponzo's request for the immediate disclosure of *Giglio* materials.

### E. Defendants' Requests for a Bill of Particulars Should be Denied Because the Defendants Have Received a Detailed Indictment and Extensive Discovery.

Defendants seek a bill of particulars detailing, among other things, the name of all Non-Operating Companies, the names of all Recruits, the names of all unidentified co-conspirators and individuals, and the source of the proceeds that defendant Ponzo laundered. In light of the details provided in the Indictment, the extensive information provided in discovery, and the Government's identification of the fraudulent loans in Schedule B of the offered plea agreements, their request for a bill of particulars should be denied.

### 1. A Bill of Particulars is Unwarranted Because the Indictment and Discovery Give the Defendants Ample Information

A bill of particulars is required only when an indictment is too vague to permit the defendant to understand the charges and prepare a defense, avoid unfair surprise,

and assert a claim of double jeopardy where appropriate. *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005). "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will we find that a bill of particulars should have been issued." *Id.* (citations omitted). If the indictment enables the defendant to understand the accusations against him and the central facts the Government will present at trial, a bill of particulars is unwarranted. *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987).

"A bill of particulars . . . is not intended to provide the defendant with the fruits of the government's investigation, [but] is instead intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985); *see also United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir. 1991); *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971). "A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant; or disclose its legal theory." *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003). And courts have "declined to require the Government to answer a set of detailed

33

interrogatories in the guise of a bill of particulars." *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972).

The Indictment here is highly detailed and does much more than merely track the statutory language. After identifying the defendants, two other named conspirators, and another three uncharged co-conspirators, Count 1 details the PPP fraud conspiracy in 18 paragraphs. Count 1 outlines how defendant Rivera recruited individuals with non-operating companies, CC-3 (Lisa Smith) prepared fraudulent PPP applications, and defendant Wessels created fraudulent tax forms, which he provided to Smith for use in the fraudulent PPP applications. Counts 2-4 charge bank fraud and identify three of the non-operating companies that were part of the PPP conspiracy. Count 2 details the EIDL fraud conspiracy in 10 paragraphs. Count 2 outlines how defendant Rivera recruited individuals with non-operating companies and how defendant Ponzo prepared fraudulent PPP applications and falsified documents. Counts 6-7 charge wire fraud and identify two of the non-operating companies that were part of the EIDL conspiracy. Count 9 alleges in detail the money laundering conspiracy undertaken by Rivera and Ponzo, including identifying specific transactions in which fraudulent loan proceeds were transferred to Rivera and specific subsequent transactions from Rivera to Ponzo. Counts 10-17 charge specific money laundering transactions. "[T]he specificity with which" the Indictment identifies the time period, events, and transactions at issue make it "highly unlikely" that

defendants might be "unfairly surprised with . . . unfamiliar" allegations at trial. *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

If, as was done here, the Government supplements a detailed charging document with substantial discovery, a bill of particulars is unnecessary. *Urban*, 404 F.3d at 772. Where "discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines." *United States v. Caruso*, 948 F. Supp. 382, 393 (D.N.J. 1996). Presumably based on current practices of providing detailed indictments and extensive discovery before trial, Judge Hillman concluded: "'The current case law does not favor granting motions for bills of particulars.'" *United States v. Lacerda*, 2013 WL 3177814 at *14 (D.N.J. June 19, 2013) (quoting *United States v. Kemp*, 2004 WL 2757867 (E.D. Pa. Dec. 2, 2004)).

Defendants here have received extensive information in discovery, including the production of over memoranda of witness interviews, loan applications, bank statements, and written communications between the defendants and co-conspirators. The Government organized these documents by producing party with load files, which made the documents readily accessible and searchable through a review platform. As a result, a defendant can identify and review, for example, all documents produced by the PPP lender KeyBank and the EIDL lender SBA. The defendants also can search the search warrant returns of cloud and email accounts to locate communications with other relevant individuals.

In considering whether to grant a bill of particulars, a court also must weigh the burden on the Government, "the government's interest in not being forced to divulge the entirety of its case prior to trial," *Zolp*, 649 F. Supp. at 706, and "the unfairness

35

that can result from forcing the government to commit itself to a specific version of the facts." *Rosa*, 891 F.2d 1066.  Courts are understandably reluctant at the pretrial stage to require a bill of particulars because it "would unfairly define and limit the government's case." *United States v. Crabb*, 2008 WL 794871, at *3 (M.D. Pa. Mar. 24, 2008).  And defendants' requests would place an enormous burden on the Government because the requests, if granted, would compel the Government to prepare a detailed catalogue of information found in the discovery—a task that, if it really were essential to the defense of this case, defendants could do themselves.

In sum, the Indictment and extensive discovery here "contain[] sufficient factual and legal information for the defense to prepare its case." *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003).  As will be clear when reviewing defendants' individual requests, they have enough information to prepare for trial, and their request for a bill of particulars should be denied.

### 2.    Defendants' Individual Requests

#### i.    Identities of the Non-Operating Companies, Recruits, and Other Individuals Mentioned in the PPP and EIDL Conspiracies

Wessels requests a bill of particulars identifying the Non-Operating Companies, Recruits, and unindicted co-conspirators involved in the PPP fraud conspiracy.  Dkt. No. 53-2, at 7-9.  Similarly, Ponzo requests a bill of particulars identifying the Non-Operating Companies and Recruits involved in the EIDL fraud conspiracy.  Dkt. No. 50, at 16-18.  Through information contained in the Indictment and provided in discovery and as part of plea negotiations, they already have the ability to identify the non-operating companies for which Wessels created fake tax forms, the non-operating

companies for which Ponzo submitted fraudulent EIDL applications, the recruits who controlled those companies, and the other individuals involved in the conspiracy. For example, the Indictment identifies several by name and others have pled guilty in this Court to their roles in the charged conspiracies. The Government also has produced memoranda of interviews of numerous individuals who played a role in the conspiracy. Of particular use in answering the defendants' questions, the Government offered Wessels a plea agreement that included a Schedule B listing 39 PPP loans by loan number and amount. The Government offered Ponzo a plea agreement that included a Schedule B listing 9 PPP loans and 5 EIDL loans by loan number, lender, and amount. Wessels and Ponzo can use the loan numbers to locate the loan files and applications, which will contain the names of the companies and their owners. Wessels also has in discovery text messages between him and Smith where they discuss by name the companies for which Wessels created fake tax forms. Ponzo has in discovery text messages between her and Rivera and between her and other individuals, in which they discuss fraudulent EIDL applications. Discovery also includes materials provided by Smith documenting the fraudulent PPP loans.

What the defendants really want is not to find out who was involved in their conspiracy—because they have that information in great detail from the discovery—but to obtain the Government's position about which individuals were co-conspirators or otherwise played a role in the events in this case. The law does not require such information in a bill of particulars. "'It is well settled that courts are 'highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators.'" *United States v. Smukler*, 330 F. Supp. 3d 1050, 1066 (E.D. Pa. 2018)

(citation omitted).  One court specifically declined the defendants' request "to require the government to make legal conclusions as to numerous individuals who were peripherally involved in this matter." *United States v. Mariani*, 7 F. Supp. 2d 556, 560-61 (M.D. Pa. 1998).  Numerous other courts in this circuit have denied requests that the government identify unindicted co-conspirators or persons identified as "others" in the indictment. *See, e.g., United States v. Cook*, 2018 WL 1744682, at *2 (M.D. Pa. April 11, 2018); *United States v. Atwell*, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015); *United States v. Depiro*, 2013 WL 663303, at *5 (D.N.J. Feb. 20, 2013) (declining request for "the identify of all unindicted co-conspirators and aiders and abettors"); *United States v. Knight*, 2013 WL 3367259, at *4-5 (E.D.P.A. July 3, 2013) (rejecting request to identify co-conspirators and persons identified as "others" in the indictment); *United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008) (declining request for bill of particulars identifying all persons who participated in the offenses); *United States v. Sampson*, 2012 WL 214707, at *3 (M.D. Pa. Jan. 24, 2012) (denying request because defendant had witness interviews and plea agreements of several co-conspirators); *see also United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others involved.").  Defendants offer no authority saying they are entitled to the bill of particulars they seek.  Their request should be denied.

      ii.   <u>Source of Proceeds for Ponzo's Money Laundering</u>
                <u>Transactions</u>

Ponzo requests a bill of particulars "specify[ing] the source of the proceeds that Ponzo supposedly laundered."  Dkt. No. 51, at 18-19.  Again, the Indictment and

discovery contain that information and a bill of particulars is not warranted.  The

Indictment alleges that Ponzo conspired with Rivera to launder the loan proceeds

obtained via the underlying wire fraud conspiracy, and it identifies and charges two

specific transactions from Rivera to Ponzo.  The discovery contains full bank records of

the bank accounts into which fraudulent loan proceeds were deposited, Rivera's bank

accounts that received a portion of the proceeds, and Ponzo's bank accounts that

received a portion of the proceeds from Rivera.

The Government is not required to provide additional information about the

source of the proceeds.  The Indictment clearly alleges that the source of the proceeds

was the wire fraud conspiracy that she participated in with Rivera to defraud the

SBA.  Ponzo's "further request for specification of the source of the proceeds is not

necessary to understand the charges against" her.  *United States v. Gasperini*, No. 16-

CR-441 (NGG), 2017 WL 2399693, at *12 (E.D.N.Y. June 1, 2017); *United States v.

Leon*, No. 1:08-CR-65-1, 2008 WL 4966904, at *1 (D. Vt. Nov. 18, 2008) (denying

motion for bill of particulars seeking "the exact known source from where each cash

payment for the Leriche rental property was derived from" and the "specific date" each

payment was obtained).  The Court should deny this motion for a bill of particulars.

## IV.    THE DEFENDANTS SHOULD BE ORDERED TO PRODUCE RECIPROCAL DISCOVERY AND PRIOR DEFENSE WITNESS STATEMENTS.

As set forth in Rule 16(b), upon complying with a request by a defendant for

similar material, the Government may "[i]nspect and copy or photograph books,

papers, documents, photographs, tangible objects . . . which are within the possession,

custody, or control of the defendant and which the defendant intends to introduce as

evidence in chief at trial." Fed. R. Crim. P. 16(b). Similarly, Rule 26.2 calls for the production of written or recorded statements of any witness a defendant intends to call to testify at trial.

The Government fulfilled its discovery obligations in this case and is entitled to reciprocal discovery. To date, the Government has received no discovery from the defendants. The Government is entitled to this information, and the Court should direct the defendants to immediately produce reciprocal discovery and produce any written or recorded statements of potential witnesses they intend to call at trial at the time of *Jencks* disclosures.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should deny the defendants' pretrial motions in their entirety and grant the Government's motion for reciprocal discovery and witnesses' prior statements.

Respectfully submitted,

VIKAS KHANNA
Acting United States Attorney

By:    DANIEL A. FRIEDMAN
JASON M. RICHARDSON
Assistant United States Attorneys

Dated:  January 14, 2025

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on this day I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Brief of the United States in Opposition to Defendants' Pretrial Motions.

Respectfully submitted,

VIKAS KHANNA
Acting United States Attorney

DANIEL A. FRIEDMAN
JASON M. RICHARDSON
Assistant United States Attorneys

Date: January 14, 2025